**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Arthur R. BLACK, Defendant-Appellant.**

**No. 73–3003.**

United States Court of Appeals, Ninth Circuit.

March 11, 1975.

---

Anthony Savage, Jr. (argued), Kempton, Savage & Gossard, Seattle, Wash., for defendant-appellant.

Irwin H. Schwartz, Asst. U. S. Atty. (argued), Seattle, Wash., for plaintiff-appellee.

Before MERRILL and KOELSCH, Circuit Judges, and MURRAY,* District Judge.

## OPINION

KOELSCH, Circuit Judge:

Arthur R. Black appeals from a judgment convicting him of three counts of unlawfully distributing a controlled substance. 21 U.S.C. § 841(a)(1).

The first of his two assignments is in the nature of a claim of variance.

21 U.S.C. § 841(a)(1) reads, in pertinent part:

"(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to . . . distribute, or dispense . . . a controlled substance . . .."

Black contends, in substance, that his violations—if any were established—were those of dispensing not distributing (with which he was charged). Although recognizing that the quoted provision pro-

scribes both acts, he argues that because he was—as the government itself proved—a duly licensed "practitioner," defined in § 802(20) as "a physician . . . licensed, registered, or otherwise permitted, by the United States or the jurisdiction in which he practices or does research, to distribute [or] dispense . . . a controlled substance in the course of professional practice . . ." and because the deliveries here were pursuant to his prescriptions, that the matters came within the purview of 21 U.S.C. § 802(10), which reads: "The term 'dispense' means to deliver a controlled substance to an ultimate user . . . pursuant to the lawful order of, a practitioner, including the prescribing . . . of a controlled substance . . ." and not within 21 U.S.C. § 802(11): "The term 'distribute' means to deliver (other than by administering or dispensing) a controlled substance. . . ."

We disagree. By definition "dispense" expressly contemplates a "lawful order"; if the order is not such, the prescription is not lawful under 21 U.S.C. § 829.[1] If the prescription is not lawful, the "practitioner" does not dispense; rather, under § 802(11), he "distributes"—that is, he effects delivery "other than by dispensing."[2] In short, a "practitioner" who dispenses does not violate the Act.[3]

Black's second assignment, which he characterizes as one relating to evidence,

* The Honorable William D. Murray, United States District Judge for the District of Montana, sitting by designation.

1. 21 U.S.C. § 829(a): ". . . no controlled substance . . . may be dispensed without the written prescription of a practitioner . . .."

2. Such is the Attorney General's interpretation. 21 C.F.R. § 306.04(a), promulgated pursuant to the authority of 21 U.S.C. § 871, explicates the definition of "dispense" thus:

"A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. . . . An order purporting to be a prescription issued

not in the usual course of professional treatment or in legitimate and authorized research is not a prescription within the meaning and intent of section 309 of the Act (21 U.S.C. § 829) . . .."

3. As succinctly explained by the First Circuit in United States v. Badia, 490 F.2d 296 (1st Cir. 1973):

"We think the reason Congress included the term 'dispense' in § 841(a)(1) was to compel physicians to become properly licensed. If not licensed, a physician could then be convicted of unlawful dispensing. However once licensed, he could not be convicted of unlawful dispensing because, as we stated above, the statute defines the term in and of itself as a lawful act." 490 F.2d at 298 n. 4.

in reality poses a very nice question of substantive law.

Black was tried to the court. At the conclusion of the government's case in chief, he moved for a judgment of acquittal for failure of the government to prove that the prescriptions were not written "for a legitimate medical purpose in the usual course of his professional practice" and hence had not proved the nonapplicability of § 822(b), the medical exception which permits "practitioners" to lawfully dispense controlled substances.[4]

The government, relying on 21 U.S.C. § 885(a)(1),[5] took the position that the medical exception was not in issue because Black had not produced evidence showing or tending to show that his prescriptions were for a legitimate medical purpose and hence had not fulfilled his burden of "going forward with the evidence with respect to any such exemption . . .."

The trial court agreed with the government and when Black thereupon declined to adduce any proof and rested, the court found him guilty.

■ The reporter's transcript manifests that the court did not find that the prescriptions were not for a "legitimate medical purpose by an individual practitioner in the usual course of professional practice," and hence that Black's acts were outside the medical practitioner's exception. Instead, what appears is that the court based the conclusion of guilt solely upon the showing that the prescriptions were signed by Black and that controlled substances were transferred

pursuant to those orders. This was error. The court confused burden of proof with burden of going forward.

■ Section 885(a)(1), viewed in the light of Supreme Court decisions governing the validity of presumptive devices which shift the burden of proceeding to a defendant, cannot validly be construed to require Black to put on evidence beyond that already adduced by the government in its case in chief. As we have pointed out above, the government by its own evidence established that Black was a "practitioner." To avoid running afoul of constitutional restrictions, this proof must be considered sufficient under § 885(a)(1) to raise the medical exception[6] and to then require the government to prove beyond a reasonable doubt that Black's acts were outside that exception, and hence criminal.

We are compelled to this conclusion by the standards set forth in Barnes v. United States, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973); Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970); Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), and Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943), for judging the validity under the Due Process Clause of statutory devices which authorize a presumption of guilt on proof of facts less than those statutorily defined to constitute the elements of the offense. That the statutory scheme involved here—a general prohibition with exceptions, with the burden on the defendant to raise the issue of exception—operates as such a

---

**4.** Section 822(b): "Persons registered by the Attorney General under this subchapter to manufacture, distribute, or dispense controlled substances are authorized to possess, manufacture, distribute, or dispense such substances . . .."

**5.** 21 U.S.C. § 885(a)(1) provides:

"It shall not be necessary for the United States to negative any exemption or exception set forth in this subchapter in any complaint, information, indictment, or other pleading or in any trial, hearing, or other proceeding under this title, and the burden of going forward with the evidence with

respect to any such exemption or exception shall be upon the person claiming its benefits."

**6.** The cases relied on by the government and the court below, United States v. Collier, 478 F.2d 268 (5th Cir. 1973); United States v. Ramzy, 446 F.2d 1184 (5th Cir. 1971), and United States v. Rowlette, 397 F.2d 475 (7th Cir. 1968), all simply recite the principle embodied in § 885(a)(1) that the burden is on the defendant seeking the benefit of an exception to raise the issue, and that the government need not negative an exception until the issue is presented. They do not deal with the problem here.

presumptive device is, upon inspection, manifest. 21 U.S.C. § 841(a)(1), set out earlier in this opinion, does not proscribe all distributions of controlled substances but only those which are unauthorized, non-excepted distributions. In this case the exception is found in 21 U.S.C. § 822(b):

> "Persons registered by the Attorney General under this subchapter to . . . dispense controlled substances are authorized to . . . dispense such substances . . . to the extent authorized by their registration and in conformity with the other provisions of this subchapter."

To "dispense," of course, Black must, as indicated above, do so pursuant to a prescription "issued for a legitimate medical purpose . . . in the usual course of his professional practice . . . ." Stated in terms of the exception involved here, the offense described by 21 U.S.C. § 841(a)(1) is distribution of controlled substances not authorized by § 822(b) because either (a) the physician

issuing the prescription was not registered, or (b) the prescription was not "issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." (Indeed, the government conceded below that were the issue of exception raised, it would then bear the burden of proving each element of the crime as just described.)

█ 21 U.S.C. § 885(a)(1) merely relieves the government of the necessity of proving one of the elements of the crime as defined, *i. e.,* "lack of authorization in the subchapter," and places the burden on an accused of going forward with evidence respecting a potential exemption. Thus § 885(a)(1) effectively creates a presumption dictating that any transfer of a controlled substance is non-authorized and consequently criminal unless the accused introduces some evidence that the transfer is lawful under the statute. Although not worded in presumptive language, the statute here operates precisely like the presumptions dealt with in *Leary, Turner,* or *Tot.*[7] It

---

7. Presumptive devices vary in form, and there is some disagreement among legal writers as to precisely how a presumptive device operates. *See* H. Ashford & D. Risinger Presumptions, Assumptions, and Due Process in Criminal Cases: A Theoretical Overview, 79 Yale L.J. 165 (1969); Morgan, Tot v. United States: Constitutional Restrictions on Statutory Presumptions, 56 Harv.L.Rev. 1324 (1943); Note, Statutory Criminal Presumptions: Judicial Sleight of Hand, 53 Va.L.Rev. 702 (1967). Wigmore defines a presumption as follows:

> "A rule of presumption is simply a rule changing one of the burdens of proof, i. e., declaring that the main fact will be inferred or assumed from some other fact until evidence to the contrary is introduced." 4 Wigmore, Evidence § 1356, at 857 (Chadbourn rev. 1972).

Ashford & Risinger define it:

> "A presumption is that legal device which imposes the burden of introducing evidence as to a given issue upon the opponent of the party who has the burden of persuasion as to that issue." 79 Yale L.J., *supra,* at 172.

Under either definition it is clear that a statute assigning the burden of production on an issue creates a presumption at the same time. Indeed, the landmark Cardozo opinion in Morrison v. California, 291 U.S. 82, 54 S.Ct. 281,

78 L.Ed. 664 (1934), which defined, in the context of a statute similar to the one here, the formerly applicable test for judging the due process validity of statutory presumptions, implicitly recognizes the nexus between the two. At one point the opinion states:

> "The decisions are manifold that within limits of reason and fairness the burden of proof may be lifted from the state in criminal prosecutions and cast on a defendant. The limits are in substance these, that the state shall have proved enough to make it just for the defendant to be required to repel what has been proved with excuse or explanation . . . ." 291 U.S. at 88–89, 54 S.Ct. at 284.

Elsewhere it states:

> " 'The legislature may go a good way in raising [a presumption] or in changing the burden of proof, but there are limits.' McFarland v. American Sugar Co., 241 U.S. 79, 86 [36 S.Ct. 498, 501, 60 L.Ed. 899]. What is proved must be so related to what is inferred in the case of a true presumption as to be at least a warning signal according to the teachings of experience. 'It is not within the province of a legislature to declare an individual guilty or presumptively guilty of a crime.' McFarland v. American Sugar Co., *supra;* Bailey v. Alabama [219 U.S. 219, 31 S.Ct. 145, 55

authorizes a finding of guilt in the absence of proof of one of the elements of the crime defined—here "non-exception" —upon proof of other elements of the crime—here "knowing transfer of a controlled substance." [8]

Thus, the validity and permissible manner of application of the statutory presumption of non-exception created by § 885(a)(1) must be measured by the standards applied by the Court in judging presumptions, the clearest statement of which is perhaps found in *Tot:*

"Under our decisions, a statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed, if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience." 319 U.S. at 467, 63 S.Ct. at 1245.

The Court clarified that formulation in *Leary, Turner,* and *Barnes.* In *Leary* the Court explained:

"The upshot of Tot, Gainey (United States v. Gainey, 380 U.S. 63 [85 S.Ct. L.Ed. 191], *supra;* Manley v. Georgia [279 U.S. 1, 49 S.Ct. 215, 73 L.Ed. 575], *supra.* There are, indeed, 'presumptions that are not evidence in a proper sense but simply regulations of the burden of proof.' Casey v. United States [276 U.S. 413, 48 S.Ct. 373, 72 L.Ed. 632], *supra.* Even so, the occasions that justify regulations of the one order have a kinship, if nothing more, to those that justify the others. For a transfer of the burden, experience must teach that the evidence held to be inculpatory has at least a sinister significance (Yee Hem v. United States [268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904], *supra;* Casey v. United States, *supra*), or if this at times be lacking, there must be in any event a manifest disparity in convenience of proof and opportunity for knowledge, as, for instance, where a general prohibition is applicable to every one who is unable to bring himself within the range of an exception. Greenleaf, Evidence, vol. 1, § 79." 291 U.S. at 90–91, 54 S.Ct. at 285.

*See* Wigmore, *supra,* at 865 n. 15.

**8.** The statute would accomplish precisely the same thing were it written:

"Distribution of controlled substances, not made by a registered medical practitioner for a legitimate medical reason in the

754, 13 L.Ed.2d 658] (1965)), and Romano (United States v. Romano, 382 U.S. 136 [86 S.Ct. 279, 15 L.Ed.2d 210] (1965)) is, we think, that a criminal statutory presumption must be regarded as 'irrational' or 'arbitrary,' and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." 395 U.S. at 36, 89 S.Ct. at 1548.

In *Turner* and *Barnes* the Court reaffirmed that position but expressly declined to decide the issue, left open in *Leary* (*see* 395 U.S. at 36 n. 64, 89 S.Ct. 1532), of whether or not a presumed fact in a criminal case must follow beyond a reasonable doubt from the fact proved, or whether it is sufficient that the presumed fact follow more likely than not; in both cases the Court decided that the attacked presumptions satisfied the more stringent standard.

In addition, the Court, rejecting Holmes' "greater includes the lesser"[9] usual course of professional practice, is unlawful. In a prosecution under this section any distribution of a controlled substance shall be conclusively presumed to be unauthorized and unlawful under this section unless and until the defendant produces evidence that he is a medical practitioner registered with the Attorney General, and that the controlled substance was dispensed for a legitimate medical reason in the usual course of his professional practice."

Indeed, under § 885(a)(1), as construed by the trial court, unlike the statutes in *Turner* and *Leary,* the presumption is not weighed as evidence by the trier of fact in determining whether the defendant is non-excepted beyond a reasonable doubt. Rather, the statute makes the presumption of non-exception and therefore of guilt conclusive until rebutted. The statute therefore potentially operates more oppressively than those in *Leary* or *Turner,* where the jury is not compelled to accept the factual proposition the legislature has embodied in the presumption.

**9.** Holmes' position, expounded in Ferry v. Ramsey, 277 U.S. 88, 48 S.Ct. 443, 72 L.Ed. 796 (1928), as it applies here, is that if the legislature has the power to make distribution of all controlled substances illegal, it certainly then must have the power to create excep-

and Cardozo's "comparative conven-ience"[10] tests, also made clear in this line of cases that before the burden of pro-ducing evidence to establish his innocence may ,be shifted to a defendant, the pre-sumption which shifts the burden must be rational—that is, it must be more like-ly than not that the defendant's guilt follows from the proved facts. In *Barnes* the Court stated:

> "In Tot v. United States, 319 U.S. 463, [63 S.Ct. 1241, 87 L.Ed. 1519] (1943), the Court stated that the bur-den of going forward may not be free-ly shifted to the defendant. See also Leary v. United States, 395 U.S. 6, 44–45, [89 S.Ct. 1532, 23 L.Ed.2d 57] (1969). *Tot* held, however, that where there is a 'rational connection' be-tween the facts proved and the fact presumed or inferred, it is permissible to shift the burden of going forward to the defendant." 412 U.S. at 846 n. 11, 93 S.Ct. at 2363.

*See Turner, supra,* 396 U.S. at 407 n. 8, 90 S.Ct. 642; 4 Wigmore, Evidence § 1356, at 872 n. 27 (Chadbourn rev.

1972). The necessary corollary to this proposition is that once sufficient facts have been shown to render the statutory presumption of guilt irrational as applied to those particular facts, the presump-tion may not then be used to justify imposition of a further burden of pro-duction or to deprive the accused of a factual determination upon the disputed issue—the government must then prove its case.

■ Whatever the validity of the pre-sumption of non-exception on a record showing only a transfer of controlled substances and devoid of any facts bear-ing on the issue of exception, an issue we do not here decide,[11] we are clear that the presumption as applied here did not meet the Court's standards. The government here proved a variety of facts[12] bearing on the medical practi-tioner's exception, among them that Black was a medical practitioner, that he was duly registered with the Attorney General to dispense controlled sub-stances, that the controlled substances were transferred pursuant to a writing

tions as a matter of grace, but put the burden on the defendant benefiting from the excep-tion to prove he comes within it. Holmes' position has received the support of commen-tators, *see* Wigmore, *supra,* at 859–60; McCormick, Evidence 659 (1954), but was re-jected by the Court on the rationale that the presumption must be judged on the basis of what the legislature in fact chose to make criminal, not what it might have. Tot v. United States, 319 U.S. 463, 472, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943). *See* Wigmore, *supra,* at 872 n. 27, and cases there cited. *See* 79 Yale L.J. at 178. *But see* Wigmore, *supra,* at 871 n. 24. The Court's position recognizes a proper legislative function in defining crimes while preventing the legisla-ture from legislatively abolishing the pre-sumption of innocence the judicial system ac-cords those accused of the crime the legisla-ture has defined. By requiring a rational con-nection between facts the government proves at trial and a conclusion that the defendant is guilty of the act the legislature has in fact deemed criminal, the Court prevents the legis-lature from statutorily compelling a defendant ·to prove his innocence until the government has shown at least that he is probably guilty. *See* 79 Yale L.J., *supra,* at 178, 188–92.

10. Cardozo recognized the relative ease of ac-cess to proof as a reason for shifting the

burden of production, subject to flexible lim-its imposed by the requirement that the ac-cused not be subjected to undue hardship or oppression. *See Morrison, supra. See* Wig-more, *supra,* at 867. However, the Court re-jected this formulation in favor of rationality of inference in *Tot, supra,* stating:

> "The argument from convenience is ad-missible only where the inference is a per-missible one, where the defendant has more convenient access to proof, and where re-quiring him to go forward with proof will not subject him to unfairness or hardship." 319 U.S. at 469–70, 63 S.Ct. at 1246.

*See* Wigmore at 870 n. 23.

11. We have no facts before us and no judicial knowledge of whether or not a greater por-tion of the controlled substances transferred are transferred illegally, or pursuant to a stat-utory exception. As we rule that the burden of production imposed by § 885(a)(1) has been met by the government's proof, the is-sue is irrelevant in this case.

12. It is of course irrelevant who produces the facts raising an issue; the defendant's burden of production may be met either by his own evidence or by the prosecution's case in chief. Notaro v. United States, 363 F.2d 169, 174 (9th Cir. 1966). *See* Rodgers v. United States, 402 F.2d 830 (9th Cir. 1968).

purporting to be a prescription, and that the transfers were to patients at a clinic where Black was the attending physician. The sole issue to be resolved in deciding whether the orders by which the controlled substances were transferred were prescriptions "issued for a legitimate medical purpose by an individual practitioner in the usual course of his professional practice." By treating that issue as foreclosed from consideration and concluded against Black [13] under § 885(a)(1) by reason of his failure to go forward with evidence on the issue, the court necessarily interpreted [14] the presumption of non-exception to read: "A registered medical practitioner authorized to distribute controlled substances who orders such controlled substances transferred to patients shall be conclusively presumed to do so for a non-authorized purpose unless he comes forward with evidence that the prescriptions were issued for a legitimate medi-

cal purpose in the usual course of professional practice." Such an application of § 885(a)(1) renders it irrational. It is not "more likely than not" that medical practitioners registered to dispense controlled substances do so illegitimately and are guilty of a criminal act; common experience, we think, dictates precisely the opposite conclusion. Given the irrationality of the presumption of non-exception as applied here,[15] it may neither be used to conclude the issue of non-exception nor to transfer the burden of going forward to Black; and he may not be found guilty of violation of § 841(a)(1) unless the trier of fact determines beyond a reasonable doubt that Black's conduct was not within the medical exception authorized by the statute.

■ As due process precludes conviction except upon proof beyond a reasonable doubt of every element of the crime,[16] and as the court below clearly

13. The court, by finding appellant guilty on proof that he authorized the transfer of controlled substances, treated the presumption of non-exception created by § 885(a)(1) as conclusive, at least until some quantum of evidence raises the issue—i. e., until the issue is raised, the presumption precludes presentation of the issue to the fact finder and compels a finding of non-authorization.

14. The court's finding of guilt, without deciding whether the appellant's conduct fell within the medical exception, constituted a ruling that as a matter of law the evidence presented by the government was not sufficient to raise the issue in the face of the presumption, and hence necessarily interpreted the presumption of non-exception as sufficient to overcome the thrust of that evidence.

15. In judging the common sense validity of the presumption as it operates here, we look only to those facts proved by the government bearing on the medical exception which are favorable to the defendant. If, viewed from that perspective, it is "more likely than not" that the defense exists (and hence less likely than not that the statutorily imposed presumption of non-exception is rational), then the defendant is entitled to a resolution of the ambiguities of his conduct, with the government bearing the burden of proof on the issue. Any other standard of review would potentially allow application of the statutory presumption to foreclose resolution of the issue in a situation where the fact finder would have determined that the facts warranted a

finding that the defense more likely than not existed. Were the facts bearing on the exception looked at on review in a light favorable to the government, the statutory presumption of non-exception could then be applied to prevent determinations and compel a finding of guilt when the presumption in fact operates irrationally, thereby effectively placing the burden of producing evidence of innocence on the defendant in all cases except those where the government's case establishes the defendant's innocence as a matter of law.

16. Black's brief intimates an objection to § 885(a)(1) on the ground that it places impermissible pressure on him to take the witness stand. We are clear that as we have construed the section, it is immune from constitutional challenge on this basis. The Court has made clear that so long as the presumption which shifts the burden of production is permissible, the coercion thereby created on the defendant to testify is likewise permissible. See Barnes, supra, 412 U.S. at 846–47, 93 S.Ct. 2357; Turner, supra, 396 U.S. at 417–18, 90 S.Ct. 642; Yee Hem v. United States, 268 U.S. 178, 185, 45 S.Ct. 470, 69 L.Ed. 904 (1925). But see Gainey, supra, 380 U.S. at 74–85, 85 S.Ct. 754 (Black, J., dissenting); Turner, supra, 396 U.S. at 431–32, 90 S.Ct. 642 (Black, J., dissenting). Moreover, an accused under this statute has ample ways short of taking the stand to adduce sufficient evidence to rebut the presumption of non-exception and put the government to proof of its case.

did not make a determination on one element of the crime, *i. e.,* lack of authorization under the medical exception, the judgment of conviction cannot stand. The judgment is vacated, and the matter is remanded for further proceedings.[17]

---

17. We, of course, intimate no opinion on the evidence already adduced. Because of the nature of our ruling, we think it not inappropriate for the court below to allow either party to reopen for the purpose of presenting further or other evidence.