**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Jae Gab KIM, Defendant–Appellee.**

United States of America,
Plaintiff–Appellant,

v.

John Edward Stoll, Defendant–
Appellee.

Nos. 01–50472, 01–50543.

United States Court of Appeals,
Ninth Circuit.

Submitted July 10, 2002.*

Aug. 5, 2002.

Miriam A. Krinsky and Becky S. Walker, Assistant United States Attorneys, Los Angeles, CA, for the plaintiff-appellant.

Maria E. Stratton, Federal Pubic Defender, James H. Locklin, Deputy Federal Public Defender, Los Angeles, CA, for defendant-appellee Stoll.

William J. Genego, Esq., Santa Monica, CA, for defendant-appellee Kim.

Before NOONAN, WARDLAW and BERZON, Circuit Judges.

## OPINION

NOONAN, Circuit Judge:

These two cases present in different facts the same issue, namely whether an indictment of a licensed pharmacist for illegal distribution of a named drug must

---

\* This panel unanimously finds this case suitable for decision without oral argument. See

Fed. R.App. P. 34(a)(2).

contain an allegation that the pharmacist knew that the drug would be used to manufacture a drug outside the scope of his authority as a licensed pharmacist. The district court read circuit precedent to require such an allegation and, on finding the allegation missing, dismissed the indictment in Kim's case and dismissed the indictment and vacated the conviction in Stoll's case.

These appeals by the government followed. Differing from the district court in our reading of the relevant cases, we reverse and remand.

## PROCEEDINGS

On February 25, 2000, John Edward Stoll was charged in a one-paragraph indictment with "knowingly and intentionally possess[ing] pseudoephedrine, a listed chemical, knowing and having reasonable cause to believe that the pseudoephedrine would be used to manufacture a controlled substance, namely methamphetamine, a Schedule II controlled substance." The caption of the indictment read: "21 U.S.C. § 841(d)(2),[1] § 802(33) and (34)(K): Illegal Possession of a Listed Chemical."

Without challenging the indictment, Stoll pleaded not guilty and went to trial. The government presented evidence that Stoll owned and operated Anza Pharmacy in the small town of Anza, California; that, between January 1998 and March 2000, he bought over 500,000 pseudoephedrine tablets; and that he knew that customers regularly came to him to buy this drug in order to produce methamphetamine.

The jury returned a verdict of guilty. Stoll then moved to dismiss the indictment and vacate the verdict. On August 13, 2001, the district court granted both motions.

On March 30, 2001, Jae Gab Kim was indicted on one count of having, on or about July 12, 2000, "knowingly and intentionally distributed pseudoephedrine, a list I chemical, knowing and having reasonable cause to believe that the pseudoephedrine would be used to manufacture a controlled substance, namely methamphetamine, a Schedule II controlled substance." The relevant statutes were listed in the heading as 21 U.S.C. §§ 841(d)(2), 802(33) and (34)(K). Count Two charged Kim with a similar offense on July 13, 2000; Count Three charged him with another such crime on July 14, 2000; Count Four charged another such distribution on July 28, 2000; Count Five charged another distribution on August 30, 2000; Count Six did the same as to January 4, 2001, and Count Seven as to January 5, 2001.

Kim moved to dismiss the indictment. On July 9, 2001, after argument, the district court granted the motion.

The government appeals both decisions.

## ANALYSIS

Timeliness of the Appeals. Stoll and Kim contend the government appealed too late. In Stoll the district court announced its decision from the bench on August 13, 2001; the government's appeal was filed on September 14, 2001, thirty-two days later. But 18 U.S.C. § 3731 provides that such an appeal dismissing an indictment "shall be taken within thirty days after the decision, judgment or order has been rendered . . . ." Therefore, Stoll says, the government was two days late. Similarly, in Kim, the district court announced its decision on June 6, 2001; the government appealed on August 7, 2001, thirty-two days late according to this argument.

In reply, the government notes that Federal Rule of Appellate Procedure 4(b)(1)(B) states: "When the government is entitled to appeal, its notice of appeal must be filed in district court within 30 days after the later of: (i) the entry of the judgment or order being appealed; or (ii)

---

1. Since the indictment 21 U.S.C. § 841(d)(2) has been amended and is now codified as 21 U.S.C. § 841(c)(2).

the filing of a notice of appeal by any defendant." In Stoll, the district court's judgment was entered on the docket on August 17, 2001, and the appeal was filed less than 30 days later. In Kim, the judgment was entered July 9, 2001, and the appeal was filed less than 30 days later.

The force of the defendants' argument depends on reading "rendered" to mean "announced" or "delivered." Support for such a reading comes from Black's Law Dictionary 1165 (5th ed.1979), old case law, e.g., The *Washington*, 16 F.2d 206, 208 (2d Cir.1926), and the ordinary meaning of "rendered" in connection with courts. See Webster's Third International Dictionary 1922 n. 3(c)(2) (1986) (illustrating this meaning by a jury "rendering" a verdict). The government cites to no contrary authority. The defendants have not found any prior case where the inconsistency between the statute and the Rules has been acknowledged. But once the problem has been pointed out, it does not go away simply because no one has noticed it before.

■ By one canon of construction, the more limited provision should control, and we should read § 3731 as narrowing the government's appeal time when it is appealing the dismissal of an indictment. But we are expressly instructed as to the Rules that "All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect." 28 U.S.C. § 2072(b). The Rule trumps the statute. No conflict exists because § 2072 has abolished it. The Rules do provide that they "do not extend or limit the jurisdiction of the court of appeals." Fed. R.App. P. 1(b). It could be argued that § 3731 is a jurisdictional statute. See, e.g., *United States v. Sasser*, 971 F.2d 470, 473 (10th Cir.1992); but we have held that it is "not jurisdictional." *United States v. Humphries*, 636 F.2d 1172, 1177 n. 7 (9th Cir.1980). The appeals were timely.

The Alleged Precedents. The district court dismissed the two indictments because it read *United States v. Black*, 512 F.2d 864 (9th Cir.1975), and *United States v. King*, 587 F.2d 956 (9th Cir.1978), to require this result. The government now invites us to seek en banc review to correct these two cases. Differing not only with the district court but with the government, we decline this invitation and, instead, distinguish these cases from the present appeals.

In Black, in a prosecution under 21 U.S.C. § 841(a)(1), the government produced evidence that the defendant was a medical practitioner, licensed to dispense a controlled substance in the performance of his profession. The government produced no evidence that the defendant's acts were outside the exception created for the practitioner of medicine. We held that the government had the duty to prove Black's acts fell outside the exception and that a presumption that they were outside the exception was irrational. *Black*, 512 F.2d at 867, 871. Absence of the exception, we said, was "one of the elements of the crime." *Id.* at 868. As Black turned on the burden of proof at a trial, it does not govern here, but it does form the background of King.

King followed Black in holding that, once the defendant was shown at trial to be a doctor licensed to dispense drugs, the government must show his acts fell outside the exception. *King*, 587 F.2d at 964. King went beyond Black in holding that an indictment under 21 U.S.C. § 846 must allege that the indicted doctor lacked authorization to dispense the drugs he had distributed. The indictment had merely charged the doctor of being in a conspiracy with others in the course of which he had distributed an unknown quantity of cocaine to John Shaw, 42 grams of which were then distributed to two other named per-

sons. Absence of authorization on the doctor's part was treated by us as an element of the crime, so the indictment failed to give the defendant the notice required by the constitution. *Id.* at 963.

█ Assuming as we must that King is good law, its rationale applies to a physician charged with distributing an unknown quantity of a drug; the case holds that he could not be presumed to have acted beyond his authorization unless the indictment so alleged. Unlike the indictment in King, the indictment in Stoll did inform the defendant that he was charged with possessing pseudoephedrine that he knew would be used to manufacture methamphetamine in violation of 21 U.S.C. § 841(d)(2). The pharmacist's authorization was to sell pseudoephedrine for "legitimate medical use." 21 U.S.C. § 802(46)(B). The indictment informed Stoll that the government charged him with criminal conduct not covered by the exception. Kim was similarly charged with distributing pseudoephedrine with reason to know that it would be used to make methamphetamine in violation of 21 U.S.C. § 841(d)(2). The elements of the crime in each case were sufficiently set forth.

The difference between these cases and King is not large, but the difference does exist, and we have no reason to apply King. 21 U.S.C. § 885(a)(1) provides: "It shall not be necessary for the United States to negative any exemption or exception set forth in this subchapter in any . . . indictment . . . ." This statute is the norm, to which King is a gloss not to be extended to the present circumstances.

The judgments of the district court are REVERSED. The cases are REMANDED.